Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                                     7:20-cv-02519-PMH

| | |
|---|---|
| Kansas Gilleo, Jessica Nelson, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | First Amended Class Action Complaint |
| The J. M. Smucker Company, | |
| Defendant | |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.    The J. M. Smucker Company ("defendant") manufactures, distributes, markets, labels and sells caramel flavored syrup, under the Smucker's brand ("Product").

2.    The Product is available to consumers from retail and online stores of third-parties and is sold in sizes including containers of 20 OZ.

3.    The Product's relevant front label representations include "Smucker's," "Sundae Syrup," "Caramel Flavored Syrup" and pictures of the syrup on vanilla ice cream and a vanilla

1

milkshake.



4.     Caramel is a type of confectionary product made from granulated sugar cooked until it caramelizes, combined with butter, heavy cream and vanilla extract.

5.     The type of caramel flavor depends on its intended usage, such that a caramel flavor

may have more than one recognizable flavoring notes, i.e., "buttery," "maple" and/or "vanilla."[1]

6.     The Product's caramel flavor is shown by its front label images showing its use as an addition to vanilla ice cream and a vanilla milkshake.

7.     Vanilla is known for its ability to produce a sensation of creaminess, which enhances the smoothness and richness as part of a caramel flavor.

8.     Reasonable consumers will expect defendant's Caramel Flavored Syrup to have strong vanilla notes.

9.     The use of vanilla when making caramel syrup is confirmed not only by home cooks who publish their recipes on the internet but by scientists and flavor companies.[2]

10.    In consumer taste tests, Synergy Flavors concluded that "the dominant characteristics of the 'ideal' caramel are rummy, maple, buttery, and vanilla, with hints of fruity, burnt, and marshmallow."

11.    When caramel was sampled as part of an ice cream topping – as defendant's Product purports to be – the flavor was "high on vanilla notes."

12.    A recent scientific study of the volatile compounds present in caramel samples was described by panelists as resembling vanilla.[3]

13.    In caramel syrups, the "added vanilla flavor may be either natural, as in vanilla extract, or artificial, with vanillin being the most common."[4]

14.    According to the industry textbook, Confectionery Science and Technology, "most caramel [and fudge] formulations call for vanilla flavor to complement the caramelization products

---

[1] Synergy Flavors, Inc., "Success with caramel flavors – an essential guide for product developers," April 20, 2011.
[2] Carlsbad Cravings, "Easy Creamy Caramel Sauce."
[3] Paravisini, Laurianne, et al. "Characterisation of the volatile fraction of aromatic caramel using heart-cutting multidimensional gas chromatography," Food chemistry 167 (2015): 281-289.
[4] Id.

and cooked butter flavor."[5]

15.    Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[6]

16.    Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[7]

17.    According to one flavor supplier, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

18.    Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[8]

19.    Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[9]

20.    Label Insight determined that 76% of consumers avoid products with artificial flavors.[10]

21.    Flavoring ingredients, especially for products labeled as vanilla, are typically the most valuable component of a food, and vanilla has reached record high prices in recent years.[11]

22.    Natural flavors "almost always cost[s] much more than an artificial flavor," so companies and consumers are willing to pay higher prices for the real thing – orange flavor from

[5] Richard W. Hartel et al, "Caramel, fudge and toffee," In Confectionery Science and Technology, p. 279. Springer, Cham, 2018.

[6] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").

[7] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

[8] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.

[9] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.

[10] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

[11] Finbarr O'Reilly, Precious as Silver, Vanilla Brings Cash and Crime to Madagascar, New York Times, Sept. 4, 2018.

oranges and vanilla flavor from vanilla, as opposed to orange flavor synthesized from lemons or vanillin (the main flavor molecule in vanilla) derived from wood pulp or petroleum derivatives.[12]

23.    These consumer preferences are reflected in federal and New York state regulations requiring truthful and non-misleading designation of a food's flavor.

24.    New York law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

25.    If a product contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor," it must be identified in the flavor designation on the front label. *See* 21 C.F.R. § 101.22(i)(2); *compare with* 21 C.F.R. § 101.22(i)(1) ("no artificial flavor which simulates, resembles or reinforces the characterizing flavor").

26.    If a product contains artificial flavor which does not impact the characterizing flavor, it is not required to disclose the presence of the artificial flavor on the front label.

27.    The label – "Caramel Flavored Syrup" – gives consumers the impression that its caramel flavor is not provided by artificial flavors, because consumers are accustomed to products which are truthfully and accurately labeled. *See* 21 C.F.R. § 101.22(i)(1)(i) ("e.g., 'natural strawberry flavored shortcake,' or 'strawberry flavored shortcake'."); 21 C.F.R. § 101.22(i)(1)(ii) and 21 C.F.R. § 101.22(i)(2) ("artificially flavored"); 21 C.F.R. § 101.22(i)(1)(iii) ("with other natural flavor").

28.    However, the Product's ingredient list indicates "Vanillin (Artificial Flavor)," which means the vanilla taste is mainly due to artificial or imitation vanilla.

> **INGREDIENTS:** CORN SYRUP, HIGH FRUCTOSE CORN SYRUP, NONFAT MILK, FRUCTOSE, MODIFIED CORN STARCH, CONTAINS

---

[12] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).

2% OR LESS OF: SALT, NATURAL FLAVOR, POTASSIUM SORBATE (PRESERVATIVE), POLYSORBATE 60, SODIUM CITRATE, SODIUM PHOSPHATE, CARAMEL COLOR, VANILLIN (ARTIFICIAL FLAVOR), YELLOW 6, RED 40.

29.    Because vanilla is used with, and known for enhancing the flavor of caramel syrup, it is misleading to not designate the Product as "Artificially Flavored Caramel Syrup." *See* 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) 'artificial' or 'artificially flavored'").

30.    No reasonable consumer would be expected to or is required to scrutinize the Product's ingredient list to double-check the source of the flavor.

31.    Further, few if any reasonable consumers will know that the Product *should* declare "artificially flavored" on the front label.

32.    Reasonable consumers who review the ingredients will likely interpret the listing of "vanillin (artificial flavor)" to mean that the vanillin does not affect the Product's characterizing flavor, not being able to articulate or explain why this artificial flavor should be disclosed.

33.    Had Plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

34.    The Product contains other representations which are misleading and deceptive.

35.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.99 per 20 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

36.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act

of 2005 or "CAFA").

37.    Under CAFA, district courts have "original federal jurisdiction over class actions

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

38.    Plaintiff Kansas Gilleo is a citizen of New York.

39.    Plaintiff Jessica Nelson is a citizen of New York.

40.    Defendant is a Ohio corporation with a principal place of business in Orrville, Wayne

County, Ohio and is a citizen of Ohio.

41.    Venue is proper because Plaintiffs and many class members reside in this District

and defendant does business in this District and State.

42.    This court has personal jurisdiction over defendant because it conducts and transacts

business, contracts to supply and supplies goods within New York.

43.    A substantial part of events and omissions giving rise to the claims occurred in this

District.

Parties

44.    Plaintiff Kansas Gilleo is a citizen of Mount Vernon, Westchester County, New

York.

45.    Plaintiff Jessica Nelson is a citizen of Tuxedo Park, Orange County, New York.

46.    Defendant The J. M. Smucker Company is a Ohio corporation with a principal place

of business in Orrville, Ohio, Wayne County.

47.    During the relevant statutes of limitations, plaintiffs purchased the Product within

their district and/or State for personal consumption and/or use in reliance on the representations the Product did not contain any artificial flavors and/or that the expected vanilla flavor notes were due to real vanilla instead of the artificial flavor, vanillin.

48.    Plaintiff Gilleo purchased the Product at Target, 500 E Sandford Blvd, Mt Vernon, NY 10550 on several occasions within the past two years, including or around January 14, 2020.

49.    Plaintiff Nelson purchased the Product at Walmart, 288 Larkin Dr, Monroe, NY 10950 on several occasions within the past two years, including in February 2019.

50.    Plaintiffs bought the Product at the retail prices above because she liked the product type for its intended use and expected its vanilla flavor to not be enhanced by artificial flavors, because the front label did not disclose the Product's artificial flavors.

51.    Plaintiffs were deceived by and relied upon the Products' deceptive labeling, and specifically the omission of the legally-required notice that it contained artificial vanilla flavorings.

52.    Instead of receiving the benefit of products free of artificial flavors, Plaintiffs received Products that were unlawfully labeled to deceive the consumer into believing that the Product was exclusively flavored with vanilla and contained no artificial flavoring, in violation of federal and state labeling regulations and consumer protection law against misleading representations.

53.    Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

54.    Had Defendant not violated New York law, Plaintiffs would not have been injured.

55.    The Product was worth less than what Plaintiffs paid for it and Class members would not have paid as much as they have for the Product absent Defendant's false and misleading statements and omissions.

56.     Plaintiffs lost money because of Defendant's unlawful behavior.

57.     Plaintiffs altered their position to their detriment and suffered loss in an amount equal to the amount Plaintiffs paid for the Product.

58.     Plaintiffs intend to, seek to, and will purchase the Product again when Plaintiffs can do so with the assurance that the Product's label, which indicate that the Product contains no artificial ingredients, is lawful and consistent with the Product's ingredients.

<u>Class Allegations</u>

59.     The Class will consist of all purchasers of the Product who reside in New York during the applicable statute of limitations.

60.     Plaintiffs will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

61.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

62.     Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

63.     Plaintiffs are adequate representatives because their interests do not conflict with other members.

64.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

65.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66.     Plaintiffs' counsel is competent and experienced in complex class action litigation

and intends to adequately and fairly protect class members' interests.

67.    Plaintiffs seek class-wide injunctive relief because the practices continue.

<div align="center">

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statute)

</div>

68.    Plaintiffs incorporate by reference all preceding paragraphs.

69.    Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

70.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

71.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

72.    Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product did not contain any artificial flavors and/or that the expected vanilla flavor notes were due to real vanilla instead of the artificial flavor, vanillin.

73.    Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

74.    Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<div align="center">

Negligent Misrepresentation

</div>

75.    Plaintiffs incorporate by reference all preceding paragraphs.

76.    Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

77.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product did not contain any artificial flavors and/or that the expected vanilla flavor notes were due to real vanilla instead of the artificial flavor, vanillin.

78.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

79.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

80.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

81.   Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

82.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

83.   Plaintiffs incorporate by reference all preceding paragraphs.

84.   The Products were manufactured, labeled and sold by defendant and warranted to Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

85.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

11

86.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

87.   Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

88.   Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

89.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

90.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

91.   Plaintiffs incorporate by reference all preceding paragraphs.

92.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product did not contain any artificial flavors and/or that the expected vanilla flavor notes were due to real vanilla instead of the artificial flavor, vanillin.

93.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate.

94.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

95.   Plaintiffs incorporate by reference all preceding paragraphs.

96.   Defendant obtained benefits and monies because the Product was not as represented

and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

 **WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying Plaintiffs as representatives and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 31, 2020

<div style="margin-left:50%">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533

</div>

S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

7:20-cv-02519-PMH
United States District Court
Southern District of New York

Kansas Gilleo, Jessica Nelson, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

The J. M. Smucker Company,

Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  July 31, 2020

/s/ Spencer Sheehan
Spencer Sheehan