UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KANSAS GILLEO, JESSICA NELSON,
individually and on behalf of all others similarly
situated,

                    Plaintiffs,

                -against-

THE J.M. SMUCKER COMPANY,

                   Defendant.

**MEMORANDUM OPINION
AND ORDER**

20-CV-02519 (PMH)

       Kansas Gilleo ("Gilleo") and Jessica Nelson ("Nelson," and together, "Plaintiffs") bring this putative class action against The J.M. Smucker Company ("Defendant"), alleging that the labeling on Defendant's caramel flavored syrup is deceptive and misleading. Plaintiffs assert claims against Defendant for: (1) violations of §§ 349 and 350 of the New York General Business Law ("NYGBL"); (2) negligent misrepresentation; (3) breaches of express warranty, implied warranty of merchantability, and the Magnuson Moss Warranty Act, §§ 2301 *et seq*.; (4) fraud; and (5) unjust enrichment. Plaintiffs seek monetary damages, injunctive relief, costs and expenses (including attorney's fees), certification of a putative New York class.

## **BACKGROUND**

I.   Factual Background

       Defendant manufactures, distributes, markets, labels, and sells caramel flavored syrup (the "Product"). (Doc. 13, "Am. Compl." ¶ 1). The Product is sold to consumers by third-party online and retail stores in 20-ounce containers. (*Id*. ¶ 2). The Product's front label displays the words "Smucker's," "Sundae Syrup," and "Caramel Flavored Syrup," as well as images of the Product on what appears to be vanilla ice cream and a vanilla ice cream milkshake. (*Id*. ¶ 3). A picture included in the Amended Complaint of the Product's front label is reproduced below:



(*Id*.).

The Product's label, according to Plaintiffs, "gives consumers the impression that its caramel flavor is not provided by artificial flavors, because consumers are accustomed to products [that] are truthfully and accurately labeled." (*Id*. ¶ 27). The Product's ingredient list, however, identifies "Vanillin (Artificial Flavor)," which, according to Plaintiffs, means that to the extent the Product tastes like vanilla,[1] such taste is "mainly due to artificial or imitation vanilla." (*Id*. ¶ 28). Plaintiffs allege that, "[b]ecause vanilla is used with, and known for enhancing the flavor of caramel syrup, it is misleading not to designate the Product as 'Artificially Flavored Caramel

---

[1] The Court accepts as true Plaintiffs' allegations that caramel flavor is known—and a reasonable consumer would expect it—to have "strong vanilla notes." (Am. Compl. ¶ 8). Plaintiffs cite consumer taste tests, a "recent scientific study," and an "industry textbook" to support their allegations that caramel flavor contains notes of vanilla. (*Id*. ¶¶ 9-14).

Syrup.'" (*Id.* ¶ 29). The Product is allegedly "unlawfully labeled to deceive the consumer into believing that the Product [is] exclusively flavored with vanilla and contain[s] no artificial flavoring." (*Id.* ¶ 52).

Gilleo purchased the Product at Target in Mount Vernon, New York. (*Id.* ¶ 48). Nelson purchased the Product at Walmart in Monroe, New York. (*Id.* ¶ 49). The Product is allegedly sold at a "premium price" of "no less than $2.99" per 20-ounce container. (*Id.* ¶ 35). Plaintiffs allegedly purchased the Product "expect[ing] its vanilla flavor not to be enhanced by artificial flavors, because the front of the label did not disclose the Product's artificial flavors." (*Id.* ¶ 50). Had they "known the truth" about the Product's contents, Plaintiffs allegedly "would not have bought the Product or would have paid less for it." (*Id.* ¶ 33).

II.   <u>Procedural History</u>

Plaintiffs filed their initial Complaint on March 24, 2020 (Doc. 1), and filed their Amended Complaint on July 31, 2020 (Am. Compl.). Defendant filed a pre-motion letter regarding its anticipated motion to dismiss on September 14, 2020 (Doc. 14), Plaintiffs filed their letter in opposition on September 21, 2020 (Doc. 16), and the Court held a pre-motion conference on October 1, 2020 (*see* Oct. 1, 2020 Min. Entry). The motion papers were filed on November 24, 2020. (Doc. 18; Doc. 19, "Defs. Br."; Doc. 20, "Defs. Reply"; Doc. 21, "Pl. Opp."). As courts have recently granted several similar motions in this District and other federal jurisdictions, Defendant filed notices of supplemental authority on January 25, 2021 and June 21, 2021. (Docs. 22, 24).

## **STANDARD OF REVIEW**

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id*. (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

A Rule 12(b)(6) motion, however, enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations

pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

As Judge Karas recently noted, "in considering these claims, the Court does not write on a blank slate." *Dashnau v. Unilever Mfg. (US), Inc.*, No. 19-CV-10102, 2021 WL 1163716, at *3 (S.D.N.Y. Mar. 26, 2021). Over the past year, at least eight other courts in this District have dismissed nearly identical claims in cases involving vanilla-flavored products (referred to collectively as "SDNY Vanilla Cases"). *See, e.g.*, *Dashnau*, 2021 WL 1163716 (dismissing same claims for relief based on vanilla-flavored ice cream bars); *Cosgrove v. Oregon Chai, Inc.*, No. 19-CV-10686, 2021 WL 706227, at *12-17 (S.D.N.Y. Feb. 21, 2021) (dismissing same claims for relief based on vanilla-flavored chai tea); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154 (S.D.N.Y. 2021) (same with respect to vanilla-flavored soymilk); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2-7 (S.D.N.Y. Jan. 19, 2021) (same with respect to vanilla-flavored almond milk); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-09677, 2021 WL

76331, at *2-8 (S.D.N.Y. Jan. 7, 2021) (same with respect to vanilla-flavored soymilk); *Cosgrove v. Blue Diamond Growers*, No. 19-CV-08993, 2020 WL 7211218, at *3-5 (S.D.N.Y. Dec. 7, 2020) (same with respect to vanilla-flavored almond milk); *Pichardo v. Only What You Need, Inc.*, No. 20-CV-00493, 2020 WL 6323775, at *2-6 (S.D.N.Y. Oct. 27, 2020) (dismissing NYGBL claim with respect to vanilla-flavored protein drink); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (dismissing NYGBL and common law claims with respect to vanilla-flavored ice cream).[2] "[T]he Court finds ample guidance in these intra-district decisions." *Dashnau*, 2021 WL 1163716, at *3. "Moreover, as these recent decisions illustrate, if the Court concludes as a matter of law that there is no material misrepresentation in this case, none of Plaintiffs' claims can survive the instant [m]otion." *Id*.; *see also Blue Diamond Growers*, 2020 WL 7211218, at *3 (explaining that because the plaintiffs' causes of action were "all premised on the same contention" that the defendant's labeling of the product was materially misleading, if the defendant's product "does not mispresent the contents of the container as a matter of law, [then] all of [the] [p]laintiffs' claims must be dismissed").

I.   Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A.   Plaintiffs Have Adequately Pled Past Injury

As a threshold matter, Defendant argues that Plaintiffs lack Article III standing to redress past harm because they "have not suffered any actual harm aside from their conclusory claim of paying an unexplained price premium." (*See* Defs. Br. at 12 n.1). The Court disagrees.

"The Second Circuit recently noted that 'overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact.'" *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 303 (N.D.N.Y. 2019) (quoting *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736

---

[2] One of Plaintiffs' attorneys in this case was one of the lawyers in each of these cases.

(2d Cir. 2017)); *see also Sharpe v. A&W Concentrate Co.*, No. 19-CV-00768, 2021 WL 3721392, at *2 (E.D.N.Y. July 23, 2021) ("[A] plaintiff 'comfortably satisfies the injury-in-fact prong' with an allegation that, absent the misrepresentation, the plaintiff 'would not have paid the same amount' for the product." (quoting *Colpitts v. Blue Diamond Growers*, No. 20-CV-02487, 2021 WL 981455, at *5 (S.D.N.Y. Mar. 16, 2021))); *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 177 (E.D.N.Y. 2018) ("A plaintiff's allegation that she purchased products bearing misleading labels and sustained financial injury as a result is sufficient to give that plaintiff Article III standing."). Here, Plaintiffs allege that, but for the Product's allegedly misleading label, they "would not have bought the Product[] or would have paid less for it." (Am. Compl. ¶ 33). Accordingly, the Court concludes that Plaintiffs sufficiently alleged that they overpaid for the Product, and therefore, have established Article III standing. *See Pichardo*, 2020 WL 6323775, at *6 (finding plaintiffs' allegation that "they would not have purchased the product or been willing to pay as much had they known the true facts, namely that the vanilla taste did not derive 100% from vanilla extract" sufficient to establish injury as a result of alleged misrepresentation).

### B. Plaintiffs Have Not Adequately Pled Future Injury

In addition to seeking monetary relief for past injuries, Plaintiffs also seek injunctive relief to prevent alleged ongoing illegal practices. (Am. Compl. at 13 ¶¶ 2-3). Defendant argues, in response, that Plaintiffs lack Article III standing to seek such prospective relief because Plaintiffs have not alleged a threat of future injury. (Defs. Br. at 7-10). The Court agrees with Defendant.

Indeed, Plaintiffs do not have standing to seek injunctive relief because they are now aware of the allegedly misleading labeling on the Product, and therefore cannot demonstrate that they will be harmed in a similar way going forward. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Plaintiffs lack standing to pursue injunctive relief where they are unable to

establish a 'real or immediate threat' of injury." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983))); *id.* ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way.").

The Second Circuit recently reaffirmed this principle in *Berni v. Barilla S.p.A.*—a case involving allegedly deceptive pasta packaging. 964 F.3d 141, 146-49 (2d Cir. 2020). *Berni* reasoned as follows:

> In the first place, past purchasers are not bound to purchase a product again—meaning that once they become aware they have been deceived, that will often be the last time they will buy that item . . . . But even if they do purchase it again, there is no reason to believe that all, or even most, of the class members will incur a harm anew. Supposing that they have been deceived by the product's packaging once, they will not again be under the illusion that the boxes of the newer pastas are filled in the same way as the boxes of the older pastas. Instead, next time they buy one of the newer pastas, they will be doing so with exactly the level of information that they claim they were owed from the beginning.

*Id.* at 147-48. Here, as in *Berni*, Plaintiffs fail to show that they are likely to "incur a harm anew." *Id.* at 148. According to Plaintiffs, had they "known the truth" about the Product's contents, they "would not have bought the Product or would have paid less for it." (*Id.* ¶ 33). But now, by virtue of bringing this lawsuit, Plaintiffs supposedly know the truth of the Product's ingredients. As such, how could they be deceived again by the Product's label going forward?

Plaintiffs, in their opposition, attempt to distinguish *Berni*'s reasoning as limited to the class certification context. (*See* Pl. Opp. at 17-18). But this argument is unavailing, because "the reasoning behind the Circuit's decision in *Berni* applies equally" on a motion to dismiss. *Campbell*,

516 F. Supp. 3d at 396 ("The analysis of future harm does not change depending on whether the Court is considering a motion to dismiss or a motion for class certification.").[3]

The Court's conclusion is not altered by Plaintiffs' allegation that they "intend to, seek to, and will purchase the Product again when [they] can do so with the assurance that the Product's label . . . is lawful and consistent with the Product's ingredients." (*Id*. ¶ 58). The Court interprets this conditional statement to mean that Plaintiffs will only purchase the Product if and when the allegedly misleading label is fixed. If the condition goes unfulfilled, i.e., Defendant does not alter the Product's label, Plaintiffs simply will not purchase the Product again. Thus, Plaintiffs have not plausibly alleged a risk of future injury. *See Campbell*, 516 F. Supp. 3d at 395 (explaining that if plaintiff "does purchase the product again in the future, she will not be harmed in a similar way, because . . . she will only purchase the product if the allegedly misleading representations of which she complains are fixed"); *see also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *5 (S.D.N.Y. Oct. 26, 2016).

Accordingly, Defendant's motion to dismiss Plaintiffs' request for injunctive relief on behalf of themselves and a putative class is granted.

II.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

   A.   New York General Business Law Sections 349 and 350

Plaintiffs' first claim for relief is based on alleged violations of §§ 349 and 350 of the NYGBL. (Am. Compl. ¶¶ 68-74). "Section 349 prohibits '[d]eceptive acts or practices in the conduct of any business, trade or commerce,' whereas [§] 350 prohibits '[f]alse advertising in the

---

[3] Since *Berni* was decided, courts have uniformly applied it on motions to dismiss. *See, e.g.*, *Campbell*, 516 F. Supp. 3d at 395-96 (S.D.N.Y. 2021); *Rivera v. Navient Sols., LLC*, No. 20-CV-01284, 2020 WL 4895698, at *14 (S.D.N.Y. Aug. 19, 2020); *Kennedy v. Mondelez Glob. LLC*, No. 19-CV-00302, 2020 WL 4006197, at *5 (E.D.N.Y. July 10, 2020).

conduct of any business, trade or commerce.'" *Wynn*, 2021 WL 168541, at *2 (quoting NYGBL §§ 349-50 (alterations in original)). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." *Oregon Chai*, 2021 WL 706227, at *6 (citation omitted); *see also Barreto*, 2021 WL 76331, at *2 (same).

To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn*, 2021 WL 168541, at *2 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)); *see also Oregon Chai*, 2021 WL 706227, at *6 (same); *Twohig*, 519 F. Supp. 3d at 160 (same).

To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig*, 519 F. Supp. 3d at 160 (quoting *Sarr v. BEF Foods, Inc.*, No. 18-CV-06409, 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020) (alteration and internal quotation marks omitted)). Rather, they must "plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (quoting *Sarr*, 2020 WL 729883, at *3). Finally, "[a]lthough the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact," *Wynn*, 2021 WL 168541, at *2, "it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer,'" *id.* (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Defendant disputes the second and third elements of the NYGBL analysis, namely, whether the Product's labeling is "materially misleading" and whether Plaintiffs "suffered an injury."

(Defs. Br. at 10-12, 17-21). As discussed in Section I.A. of the Court's Analysis, *supra*, Plaintiffs sufficiently alleged that they have "suffered an injury." Therefore, the only issue left to resolve is whether the Product's labeling is "materially misleading."

Generally speaking, the plaintiffs in the SDNY Vanilla Cases have advanced variations of the same argument in attempts to establish that the product labels in those cases were materially misleading to consumers. Two recent cases—*Dashnau* and *Twohig*—are illustrative. In *Dashnau*, the plaintiffs argued that the words "vanilla bean ice cream" on a label for vanilla-flavored ice cream bars were materially misleading because "reasonable consumers would expect the [p]roduct's vanilla flavor to come *exclusively* from real vanilla and, in particular, from real vanilla beans—*without* artificial vanilla flavoring . . . ." 2021 WL 1163716, at *4 (emphasis in original). Similarly, the plaintiffs in *Twohig* argued that the word "vanilla" on the front label of a soymilk bottle caused consumers to believe that the product was "predominantly or exclusively flavored by vanilla beans." 519 F. Supp. 3d at 161. The courts in both of those cases found that the allegedly offending product labels were not "materially misleading," because the labels—despite using the word "vanilla"—did not suggest that vanilla beans, i.e., natural vanilla, were "the *only* source of vanilla flavoring, or that the flavor from vanilla beans constitute[d] a certain percentage of the total vanilla flavor." *Dashnau*, 2021 WL 1163716, at *6 (emphasis in original); *see also Twohig*, 519 F. Supp. 3d at 162.

Plaintiffs' allegations in this case are similar to those in *Dashnau*, *Twohig*, and the other SDNY Vanilla Cases. But unlike those cases, the Product here is caramel—*not* vanilla—flavored, and the word "vanilla" does not appear anywhere on the Product's front label. (Am. Compl. ¶¶ 1, 3). Nevertheless, for reasons similar to those in the other SDNY Vanilla Cases, Plaintiffs here fail to plausibly allege that a reasonable consumer who reads the words "caramel flavored" on the

Product's front label would conclude that this language conveys any message about the Product's *vanilla* flavor, let alone that such flavor derives exclusively (or even predominantly) from natural vanilla.

Indeed, several of the SDNY Vanilla Cases "have found that the word 'vanilla' on a product's front label makes a representation about the *flavor* of the product, but does not make a representation about the *source* of the product's vanilla flavor." *Dashnau*, 2021 WL 1163716, at *5; *see also Twohig*, 519 F. Supp. 3d at 162 (concluding that the word "vanilla" on the front label would not "lead a reasonable consumer to believe that vanilla from vanilla beans is the exclusive or predominant flavor ingredient"); *Wynn*, 2021 WL 168541, at *4 (concluding that the "[d]efendant's 'Vanilla Almondmilk' front label makes no representations whatsoever about the source of the vanilla flavor or the ingredients constituting it"). Similarly, here, the word "caramel" on the Product's label signals to reasonable consumers that the Product tastes like caramel. It does not, as Plaintiffs insist, make any representation as to the source of the Product's flavor.

Yet, even if the word "caramel" did make a representation as to the source Product's flavor (which it does not), it is difficult to comprehend how a reasonable consumer would associate such representation with the source of the Product's *vanilla* flavor, as opposed to its caramel flavor. Invariably, courts in other SDNY Vanilla Cases have found that reasonable consumers would not "conclude that the word 'vanilla' on the [p]roduct's front label implies that the [p]roduct's flavoring was derived exclusively or predominantly from vanilla beans." *Twohig*, 519 F. Supp. 3d at 161. Under this reasoning, if the word "vanilla" on a product's label would not imply such a message to a reasonable consumer about the source of a product's vanilla flavor, how could the word "caramel" plausibly do so? Put simply, it cannot, and Plaintiffs' insistence otherwise strains credulity.

12

With the weight of recent authority thoroughly against them, Plaintiffs cite *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018), and *Sharpe* in an attempt to support their theory that a reasonable consumer would find the Product's label misleading. But *Mantikas* and *Sharpe* are inapt here. In *Mantikas*, "the label of the product at issue made representations about an ingredient – whole grain – not a flavor." *Twohig*, 519 F. Supp. 3d at 162. The label in *Mantikas* "also contained the additional modifier 'made with.'" *Id*. "*Sharpe* is similarly inapposite because the product represented that it was 'MADE WITH AGED VANILLA.'" *Id*. (citing *Sharpe*, 481 F. Supp. 3d at 96-97, 102-03). Here, the Product's label does not contain any qualifiers, such as "made with," nor does it mention anything that could be reasonably understood to indicate the source of its flavor—vanilla, caramel, or otherwise.

The Court is similarly unpersuaded by Plaintiffs' argument that, because the Product's front label contains images of vanilla ice cream and a vanilla ice cream milkshake, a reasonable consumer would be more likely to believe that the "vanilla note in the [Product's] caramel flavor is derived predominantly or exclusively from vanilla beans." (Pl. Opp. at 6). The failure of Plaintiffs' argument is best understood by way of example. For instance, if the front label on a tub of butter depicted an image of butter spread across a slice of bread, a reasonable consumer would not understand the slice of bread in that image to be making any representations about the content or flavor of the butter.[4] Here, too, a reasonable consumer would not understand the images of vanilla ice cream to be making any representations about the content or flavor of the Product simply because the front label shows the Product poured over vanilla ice cream.

---

[4] Were the Court to accept Plaintiffs' reasoning, then the label in this example would communicate to a "reasonable consumer" that the butter is made exclusively with the natural ingredients that give bread its flavor. That is a *reductio ad absurdum*.

Lastly, to the extent Plaintiffs attempt to support their NYGBL claims based on alleged violations of Food and Drug Administration regulations, this is not a valid basis to state such a claim. "With limited exceptions, 'all . . . proceedings for the enforcement, or to restrain violations,' of the FDCA must be brought by and in the name of the United States." *Budhani v. Monster Energy Co.*, No. 20-CV-01409, 2021 WL 1104988, at *9 (S.D.N.Y. Mar. 22, 2021) (citing 21 U.S.C. § 337(a)). "It is left to federal government enforcement. The limited exceptions pertain to certain claims that can be brought by a State." *Id.* (citing 21 U.S.C. § 337(b)). "The statute does not provide a private cause of action." *Id.* "That 'gap' is not filled by the NYGBL." *Id.* "To state a [NYGBL] claim, the challenged act must be 'inherently deceptive,' and 'such acts cannot be re-characterized as 'deceptive' simply on the grounds that they violate another statute which does not allow for private enforcement.'" *Barreto*, 518 F. Supp. 3d 795, 805 (S.D.N.Y. 2021) (quoting *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 127-28 (2d Cir. 2017)). Regardless of whether the Product's label complied with the FDCA's technical requirements—which Defendant asserts it did (Defs. Reply at 6)—for the reasons described above, the Product's label was not "inherently deceptive" under New York law. At bottom, Plaintiffs' "allegations about the Product's compliance or lack thereof with the FDCA are irrelevant to its NYGBL claims." *Budhani*, 2021 WL 1104988, at *9; *see also Pichardo*, 2020 WL 6323775, at *3 n.6 ("Plaintiffs' claims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading under [NYGBL] §§ 349-50.").

Because Plaintiffs have failed to sufficiently plead that the Product's front label is "materially misleading," Plaintiffs' claims under NYGBL §§ 349 and 350 are dismissed. It is, therefore, unnecessary to reach Defendant's argument that Plaintiffs' state claims under NYGBL are preempted by federal law. *See Barreto*, 518 F. Supp. 3d at 806.

III.   <u>Plaintiffs' Remaining Claims for Relief</u>

Plaintiffs' remaining claims—breaches of express warranty, the implied warranty of merchantability, and the Magnuson Moss Warranty Act; fraud; negligent misrepresentation; and unjust enrichment—are based on Plaintiffs' allegations that the Product's label is "materially misleading," as detailed above in the context of Plaintiffs' NYGBL claims. "'Because the Court has already determined that [Plaintiffs] ha[ve] failed to allege that the [P]roduct's labeling would be likely to deceive or mislead a reasonable consumer, these causes of action are also dismissed for the reasons already stated.'" *Dashnau*, 2021 WL 1163716, at *8 (S.D.N.Y. Mar. 26, 2021) (quoting *Barreto*, 2021 WL 76331, at *6); *see also Wynn*, 2021 WL 168541, at *6 ("Plaintiffs also assert claims for negligent misrepresentation, breach of warranty, fraud, and unjust enrichment. These claims, which largely hinge on the same theory of misleading business practices rejected by the Court above, all fail as a matter of law."). The Court, however, will briefly detail the additional ways in which these claims fail as a matter of law.

A.   <u>Negligent Misrepresentation</u>

"To state a claim for negligent misrepresentation under New York law, a plaintiff must plead '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Wynn*, 2021 WL 168541, at *6 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011)). This claim fails for three reasons. First, as discussed above, Plaintiffs have not plausibly alleged that the Product's label imparted incorrect information to them. Second, Plaintiffs have not plausibly alleged the existence

of a special or privity-like relationship. *See Wynn*, 2021 WL 168541, at *6; *see also Sarr*, 2020 WL 729883, at *6-7 (finding no special relationship where the alleged misrepresentations were on a food product's label, and finding no privity absent a direct buyer-seller relationship between the parties).[5] Third, under New York law, Plaintiffs' negligent misrepresentation claim is barred by the economic loss doctrine. "Under that doctrine, a plaintiff who has 'suffered economic loss, but not personal or property injury,' may not recover in tort '[i]f the damages are the type remedial in contract.'" *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (quoting *Dervin Corp. v. Banco Bilbao Vizcaya Argentaria, S.A.*, No. 03-CV-09141, 2004 WL 1933621, at *6 n.3 (S.D.N.Y. Aug. 30, 2004)). Plaintiffs do not oppose Defendant's argument regarding the economic loss doctrine. And, for good measure, Plaintiffs effectively concede this argument in their pre-motion letter. (*See* Doc. 16 at 4 ("Plaintiffs concede [D]efendant's point regarding the negligent misrepresentation claim – that the Amended Complaint only alleges economic injury.")).

Accordingly, Plaintiffs' negligent misrepresentation claim is dismissed.

> B. Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*

Plaintiffs' claims for breach of express warranty and implied warranty of merchantability are dismissed on similar grounds. "An express warranty is an 'affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain.'"

---

[5] Plaintiffs, in their opposition, argue that their negligent misrepresentation claim was properly pled because they "emphatically" alleged that "(1) that the person making the representation 'held or appeared to hold unique or special expertise' and (2) the speaker 'was aware of the use to which the information would be put and supplied it for that purpose.'" *Dashnau*, 2021 WL 1163716, at *8 (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)). It is true that Plaintiffs alleged that Defendant "held itself out as having special knowledge and experience . . . ." (Am. Compl. ¶ 79). But Plaintiffs did not allege that Defendant "was aware of the use to which the information would be put and supplied it for that purpose." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188. Plaintiffs' attempt to revive such allegations in their opposition is belated and unavailing. *See Dashnau*, 2021 WL 1163716, at *8.

*Barreto*, 518 F. Supp. 3d at 806 (quoting N.Y. U.C.C. § 2-313(1)(a)). "To adequately state a claim for breach of an express warranty, Plaintiffs must plead '(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach.'" *Dashnau*, 2021 WL 1163716, at *9 (quoting *Wynn*, 2021 WL 168541, at *7). Here, Plaintiffs have not "not adequately pled that the Product 'does not comport with the statements contained on the label.'" *Dashnau*, 2021 WL 1163716, at *9 (quoting *Wynn*, 2021 WL 168541, at *7). Accordingly, Plaintiffs' breach of express warranty claim fails.

"A breach of the implied warranty of merchantability occurs when the product at issue is 'unfit for the ordinary purposes for which such goods are used.'" *Twohig*, 519 F. Supp. 3d at 167 (quoting U.C.C. § 2-314(c)). Here, Plaintiffs claim for breach of the implied warranty of merchantability fails because they "did not allege that the Product is not of merchantable quality." *Id*. Further, "[t]o the extent the [Amended] Complaint alleges that the Product does not conform to any promise or affirmation of fact made on its label, Plaintiffs' claim fails for the same reason as their express warranty claim." *Id*. (citing *Barreto*, 2021 WL 76331, at *7).[6]

---

[6] Defendant also argues that Plaintiffs' breach of implied warranty claim fails because they have not alleged privity. (Defs. Br. at 22-23 n.3). The Court agrees with Defendant. *See Sarr*, 2020 WL 729883, at *8 ("[B]ecause they do not allege privity, the plaintiffs fail to state a claim for breach of implied warranty."). In the alternative, because Plaintiffs do not oppose Defendant's privity argument, the Court deems Plaintiffs' implied warranty claim abandoned. *Cf. Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 645 (S.D.N.Y. 2015) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks omitted)).

Accordingly, Plaintiffs' breach of express warranty and implied warranty of merchantability claims are dismissed.[7]

C. Fraud

Plaintiffs' fraud claim similarly fails. "Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn*, 2021 WL 168541, at *7 (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). Claims of fraud must be pled "'with particularity,'" *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 9(b)), and thus a plaintiff must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent," *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 188 (internal quotation marks omitted). Phrased another way, a plaintiff must identify "the who, what, when, where, and how: the first paragraph of any newspaper story." *Silvester v. Selene Fin., LP*, No. 18-CV-02425, 2021 WL 861080, at *2 (S.D.N.Y. Mar. 8, 2021) (quoting *Backus v. U3 Advisors, Inc.*, No.16-CV-08990, 2017 WL 3600430, at *9 (S.D.N.Y. Aug. 18, 2017)). "Rule 9(b) also requires plaintiffs to 'allege facts that give rise to a strong inference of fraudulent intent.'" *Twohig*, 519 F. Supp. 3d at 166 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

---

[7] The Amended Complaint brings a claim under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* Plaintiffs, in their opposition, do not oppose Defendant's argument in support of dismissing such claim. "Regardless, Plaintiffs' claim brought under the Magnuson Moss Warranty Act is dismissed because Plaintiffs have not adequately ple[d] a cause of action for breach of written or implied warranty." *Twohig*, 519 F. Supp. 3d at 167; *see also Garcia v. Chrysler Gr. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the [Magnuson Moss Warranty Act], plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

Here, Plaintiffs fail to plead a fraud claim for two reasons. First, Plaintiffs have not pled facts sufficient to give rise to a strong inference of fraudulent intent. Their repeated allegations that "Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers that the Product did not contain any artificial flavors and/or that the expected vanilla flavor notes were due to real vanilla instead of the artificial flavor, vanillin" are conclusory, and therefore unavailing. (Am. Compl. ¶¶ 72, 77, 92). The same goes for Plaintiffs' allegation that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate." (*Id*. ¶ 93); *see also Twohig*, 519 F. Supp. 3d at 166 (dismissing fraud claim where "[t]he complaint only contains the conclusory allegation that '[d]efendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers'"); *Dashnau*, 2021 WL 1163716, at *9 (dismissing fraud claim where "[p]laintiffs allege in conclusory fashion that '[d]efendant's fraudulent intent is evinced by its failure to accurately identify the [p]roduct on the front labels, when it knew its statements were neither true nor accurate and could mislead consumers'").

Second, Plaintiffs "have failed to allege a material misrepresentation of fact or omission, since, as discussed above, a reasonable consumer would not conclude that the word" "caramel" on the Product's label "communicates that the flavor derives exclusively from real vanilla." *Wynn*, 2021 WL 168541, at *7.

Accordingly, Plaintiffs' fraud claim is dismissed.

D.  Unjust Enrichment

Lastly, Plaintiff fails to plausibly allege an unjust enrichment claim. A claim for unjust enrichment under New York State law requires that Plaintiffs "plead: '1) that the defendant

benefitted; 2) at plaintiff's expense[;] and 3) that equity and good conscience require restitution.'" *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at \*9 (S.D.N.Y. Sept. 10, 2020) (quoting *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 381 (S.D.N.Y. 2009)).

According to the New York State Court of Appeals, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). This claim for relief is "not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

Here, the theory underpinning Plaintiffs' unjust enrichment claim is that Defendant enriched itself by misrepresenting the Product (Am. Compl. ¶¶ 95-96), which is duplicative of Plaintiffs' "core theory of deception, and 'if [P]laintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.'" *Barreto*, 518 F. Supp. 3d 795, 809 (S.D.N.Y. 2021) (quoting *Corsello*, 967 N.E.2d at 1185). Therefore, Plaintiffs' unjust enrichment claim is dismissed. *See Alce v. Wise Foods, Inc.*, No. 17-CV-02402, 2018 WL 1737750, at \*12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment claim as duplicative of NYGBL §§ 349 and 350 claims); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 525 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of NYGBL § 349 and fraud claims); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as duplicative of breach of express warranty claim).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiffs' Amended Complaint with prejudice.[8]

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 18 and to close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          September 23, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[8] The Amended Complaint is dismissed with prejudice because Plaintiffs, even if given the benefit of an amended pleading, would not be able to cure the defects described herein. Under this Court's Individual Practices, Plaintiffs have already had two opportunities to amend their pleading. Yet, as noted above, Plaintiffs' common law claims are dismissed, along with their NYGBL claims, due to Plaintiffs' failure to allege that the Product's front label was "materially misleading." Accordingly, "a busy district court need not allow itself to be imposed upon by the presentation of [Plaintiffs'] theories" for a third time. *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 258 (2d Cir. 2018).